IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CSWS LLC, | ) |
| | ) |
| Plaintiff, | ) No. 08 C 0747 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| VILLAGE OF BEDFORD PARK, an Illinois | ) |
| municipal corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff CSWS LLC has been struggling, since 2004, to obtain from defendant Village of Bedford Park (the "Village"), the licenses and zoning variance necessary to open and operate an "adult entertainment business" within Village limits. The Village originally denied plaintiff's applications for licenses and zoning relief in 2004, prompting plaintiff to file suit in this court (No. 05 C 2913). That suit was settled in October 2006 pursuant to an agreement (the "2006 Agreement") that entitled plaintiff to open and operate its adult entertainment business under certain conditions. Relying on the 2006 Agreement, plaintiff dismissed the 2004 lawsuit and spent in excess of $500,000 in connection with its plan to open the business.

In December 2007, plaintiff renewed its application for the requisite licenses. This time, however, its plans were thwarted when an attorney for the Village informed plaintiff that the Village was unable to issue the licenses pursuant to 65 ILCS 5/11-5-1.5 (the "Statute"), an Illinois statute that prohibits adult businesses from operating within one mile of certain facilities (including public parks, residences, schools and places of worship). In response, plaintiff brought the instant suit, seeking a declaration that the Statute violates the United States and the Illinois Constitutions, an injunction under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C.

§ 1988. On August 29, 2008, the court dismissed the complaint on the ground that plaintiff had failed to allege that any municipal policy caused the asserted constitutional violations, as required under Monell v. New York Dept. of Social Services, 436 U.S. 658 (1978). CSWS LLC v. Village of Bedford Park, 2008 WL 4148530 (N.D. Ill. 2008), ("CSWS I").

Plaintiff has filed an amended complaint seeking the same declaratory and injunctive relief as in the original complaint, based on the same alleged constitutional violations. Plaintiff now alleges, however, that it was the Village's official policy that caused those violations. For the reasons discussed below, plaintiff's amended complaint is dismissed.

## DISCUSSION

Presumably in response to the court's observation in CSWS I that the original complaint "alleges no municipal policy at all," Id., at *2, plaintiff has added a smattering of factual allegations to identify a Village policy responsible for the violation of plaintiff's constitutional rights. For example, plaintiff adds to its original claim that the Village's decision to breach the parties' 2006 Agreement gave rise to a constitutional violation the assertion that,"the decision to breach the agreement between Plaintiff and the Village...is the official policy of the City (sic) of Bedford Park." Plaintiff then fills out this allegation with a host of auxiliary facts--that the Board of Trustees was responsible for the decision, that the Board is the Village's official policy making body, and that Village employees charged with executing the decision did so at the Board's direction. Unfortunately for plaintiff, in its attempt to "raise a right to relief above a speculative level," Bell Atlantic Corp. v. Twombley, 127 U.S. 1955, 1959 (2007), plaintiff succeeds only in pleading itself out of court.

2

A reasonable interpretation of the amended complaint identifies two possible Village "policies" giving rise to plaintiff's claims. The first is the "policy" of enforcing the Statute. Plaintiff all but concedes that this "policy" cannot support a Monell claim. "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the policy of enforcing state law." Surplus Store and Exchange Inc. v. City of Delphi, 928 F.3d 788, 790 (7th Cir. 1991). Confronted with this unambiguous statement of Seventh Circuit law, plaintiff takes a slightly different tack, arguing that neutral enforcement of the Statute is merely an "excuse" by the Village to avoid granting plaintiff the licenses it seeks, and that the Village's real policy is to deprive plaintiff of its First Amendment rights. This argument has no merit.

First, the facts alleged in the amended complaint suggest the contrary: before the Statute became effective, the Village *agreed* to allow plaintiff to operate its business pursuant to the 2006 Agreement. More importantly, however, plaintiff does not contest that on its face, the Statute prohibits plaintiff from operating its desired business, nor does plaintiff allege that the Village had any discretion to grant plaintiff the licenses it seeks without violating the Statute.[1] "When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the

---

[1] On its face, the Statute makes it unlawful only to "locate, construct, or operate" an adult entertainment facility within certain parameters, not to issue a license to any such facility. 65 ILCS 5/11-5-1.5. Arguably, then, defendant would not violate the literal terms of the statute by issuing the requested licenses, even assuming that plaintiff would violate them if its plans came to fruition. Plaintiff has not raised this argument, however, apparently conceding that the Statute, if not unconstitutional, effectively prevents defendant from issuing the licenses. In any event, to the extent resolution of plaintiff's claims turns on statutory construction, Illinois courts are well positioned to adjudicate them, as they could in the context of a breach of contact claim. See infra, footnote 3.

3

municipality, that is responsible for the injury." Bethesda Lutheran Homes and Services, Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998).

Plaintiff's claim that defendant's invocation of the Statute is nothing but a pretext for its policy of censoring plaintiff's constitutionally protected activities might have had traction if plaintiff had alleged, for example, that the Village selectively enforced the Statute, or that the Village could have decided, consistently with the Statute, to grant the licenses plaintiff seeks. But the amended complaint makes no such allegations. As it stands, plaintiff does no more than contend that the Statute now precludes defendant from issuing licenses that defendant was independently disinclined to issue in the first place. But whether the Village complies with the Statute's mandate willingly or grudgingly is of no consequence:

> The state of mind of local officials who enforce or comply with state or federal regulations is immaterial to whether the local government is violating the Constitution if the local officials could not act otherwise without violating state or federal law. The spirit, the mindset, the joy or grief of local officials has no consequences for the plaintiffs if these officials have no discretion that they could exercise in the plaintiffs' favor. 'Municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives.'

Bethesda Lutheran, at 718-19 (7th Cir 1998) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion). Plaintiff's allegations that the Board of Trustees of the Village was responsible for the decision not to issue the requested licenses, that the Board is the Village's official policy making body, etc., are of no help to plaintiff. Plaintiff's claims fail not because the Board's action was not "official," but because the Board had no authority to act otherwise under state law.[2]

---

[2]Quinones v. City of Evanston, 58 F.3d 275 (7th Cir. 1995), does not compel a contrary
(continued...)

The second policy identified in the amended complaint is the Village's "official policy" of breaching the 2006 Agreement. If plaintiff believes that the Village has failed to perform its obligations under the 2006 Agreement, it is free to bring a breach of contract claim in the appropriate forum.³ Merely stating that the alleged breach constitutes the "official policy" of the Village is insufficient, without more, to bring plaintiff's claim into the realm of § 1983. The court agrees with defendant that violations of state law are not actionable under § 1983. Pacelli v. Devito, 972 F.2d 871, 875 (7th Cir. 1992).

## CONCLUSION

For the foregoing reasons, the Village's motion to dismiss the amended complaint with prejudice (as to plaintiff's § 1983 claims) is granted.

**ENTER:** November 17, 2008

_____
**Robert W. Gettleman
United States District Judge**

---

²(...continued)
conclusion. The Quinones court held that the City of Evanston could not avoid liability under the Age Discrimination in Employment Act on the ground that the it acted pursuant to state law, but the court specifically distinguished ADEA cases from those arising under § 1983. In fact, Quinones explicitly affirmed the principle that under § 1983, cities are not liable for the "policy of following state law." Id. at 278.

³Consistent with their respective positions here, defendant could raise illegality, based on the Statute, as a defense in any such action, and plaintiff could counter that the Statute is unconstitutional. This framework would give Illinois courts the opportunity to decide whether the Statute's literal prohibitions against locating, constructing, or operating an adult establishment encompass licensing, as well as whether the Statute is unconstitutional. These possible arguments do not affect the conclusion that the amended complaint fails to support a claim against defendant under § 1983.